# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOSEPH A. LICAUSI,<br><br>*Plaintiff*<br><br>v.<br><br>ALLENTOWN SCHOOL DIST., et. al,<br><br>*Defendants* | Case No. 5:19-cv-01258-JDW |

## MEMORANDUM

Joseph LiCausi alleges in this case that he spoke out on matters of public concern, and the Allentown School District (the "District") and its employees acted against him for doing so. Defendants move to dismiss LiCausi's Amended Complaint in its entirety. As explained below, the Court will dismiss claims for violation of due process, racially-motivated conspiracy, and intentional infliction of emotional distress. The remaining claims can otherwise proceed.

## I.   BACKGROUND

Given the numerous allegations set forth in the Amended Complaint, the Court will not repeat every factual assertion here. In the interest of brevity, a summary of LiCausi's allegations will suffice. LiCausi worked for the Allentown School District for nearly 15 years without incident. In August 2016, LiCausi was the Assistant Principal at Harrison-Morton Middle School. The District hired Heather Williams as a teacher there, and LiCausi initially was her supervisor. LiCausi believed that Williams displayed animosity against students and teachers based on their race and/or color and counseled her regarding her behavior. On October 13, 2016, the school's Principal, Daria Custer, assigned a different Assistant Principal to supervise Williams. Custer directed that LiCausi have no further contact or interaction with Williams.

Given his concerns that the District had become a hostile environment for certain parents, teachers, and students, LiCausi attended disciplinary proceedings to show support for a Special Education Facilitator, Joseph Mercado, who the District was forcing to resign. LiCausi contends that the District subjected Mercado to discriminatory treatment. At the hearing, LiCausi openly supported Mercado and objected to how the District was treating him. Thereafter, on a regular and daily basis, LiCausi complained to the public about the District's alleged discrimination against Mercado.

LiCausi publicly criticized the District Equity Coordinator, Lucretia Brown, regarding her alleged failure to comply with the District's and the Department of Justice's anti-harassment policies and protocols for handling sexual harassment complaints within the District. He believed that Brown's failure to ensure the District's compliance with these policies presented a safety concern and exposed the District to liability. LiCausi raised his concerns publicly and with the District's Solicitor or the Solicitor's representative. LiCausi also complained about other safety issues within the District, including the District's lack of protocols concerning students bringing weapons or drugs to school.

LiCausi learned that Brown had previously ordered an Assistant Principal at another school to download a video from a student's phone displaying images of minor students engaged in sexual acts and that Brown then shared the images with parents of students at the school. LiCausi made public complaints that both the Allentown Police Department and the District failed to investigate Defendant Brown or subject her to any punishment for this conduct, which he contends is criminal.

All the while, LiCausi continued to complain that the District treated him less favorably because he is Caucasian and accused the District of promoting employees, like Brown, solely based on their race or national origin. On May 18, 2018, LiCausi filed a charge of discrimination

against the District with the Pennsylvania Human Relations Commission and the U.S. Equal Employment Opportunity Commission.

From the time he started speaking out publicly against the District in October 2016, LiCausi alleges that the District and the individual Defendants conspired to retaliate against him in various ways. He alleges, among other things, that the they did the following:

- reprimanded him without justification;
- suspended him for 3 days without pay;
- placed false and damaging information in his permanent personnel file and denied him access to that file;
- gave him negative performance evaluations;
- blocked or refused to consider his various petitions, grievances, and appeals;
- accused him of failing to prevent an assault on a student;
- investigated his handling of sexual harassment and contraband incidents without a valid basis;
- transferred him from a middle school to an elementary school; and
- summarily dismissed his application for a position as a high school principal.

LiCausi contends that these actions were taken against him in retaliation for his various public criticisms and complaints about the District.

LiCausi filed an Amended Complaint in this action on September 19, 2019. In the Amended Complaint, LiCausi asserts claims against the District, Brown, Custer, Ralph Lovelidge (Executive Director of Secondary Education), Elizabeth Kelly (Interim Director of Human Resources), Kristin Kruger (Assistant Superintendent), Serena Edwards (Executive Director of Human Resources), and Thomas Parker (Superintendent). The Amended Complaint totals 429

paragraphs over 79 pages. He asserts 10 causes of action: first amendment retaliation for his exercise of his free speech rights (Count I); first amendment retaliation for seeking redress of his grievances (Count II); violation of 14th Amendment due process rights (Count III); conspiracy under 42 U.S.C. §§ 1983 & 1985 (Counts IV-VIII); municipal liability (Count IX); and intentional infliction of emotional distress (Count X). Defendants moved to strike the Amended Complaint in its entirety and, in the alternative, seek dismissal of all 10 counts for failure to state a claim.

## II. MOTION TO STRIKE

### A. Legal Standard

A district court "may strike from a pleading … any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Content is immaterial when it has no essential or important relationship to the claim for relief. Content is impertinent when it does not pertain to the issues raised in the complaint. Scandalous material improperly casts a derogatory light on someone, most typically on a party to the action." *Lee v. Eddystone Fire & Ambulance*, No. 19-cv-3295, 2019 WL 6038535, at *2 (E.D. Pa. Nov. 13, 2019) (quotation omitted). "[S]triking a pleading or a portion of a pleading 'is a drastic remedy to be resorted to only when required for the purposes of justice.'" *Lee v. Dubose Nat'l Energy Servs., Inc.*, No. 18-cv-2504, 2019 WL 1897164, at *4 (E.D. Pa. Apr. 29, 2019) (same). Thus, "[m]otions to strike are 'not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case.'" *Eddystone Fire*, 2019 WL 6038535 at *3 (same).

### B. Analysis

Defendants make two arguments as a basis for striking the Amended Complaint: its length and its inclusion of scandalous information. The Court will not strike the Amended Complaint

based on its length.  "[V]erbosity or length is not by itself a basis for dismissing a complaint" under Rule 8's requirement of a short, plain statement of the claim.  *See Bhatt v. Hoffman*, 716 F. App'x 124, 128 (3d Cir. 2017).  In fact, in the context of a multi-party, multi-claim pleading "the entire pleading may prove to be long and complicated by virtue of the number of parties and claims." *Id.* (quotation omitted).  LiCausi's Amended Complaint, though long and somewhat repetitive, is not so poorly drafted as to justify striking it.

Defendants also seek to strike allegations about Brown benefitting form a police cover-up involving the exploitation of minor students.  "[A]llegations of corruption, and even suggestions of criminality, 'cast[ ] a derogatory light,' on their subjects." *Associated Builders & Contractors, E. Pennsylvania Chapter, Inc. v. Cty. of Northampton*, 376 F. Supp. 3d 476, 522 (E.D. Pa. 2019) (quotation omitted).  Defendants seek to strike Paragraphs 158-163, 270(d) & (e), and 282-283 of the Amended Complaint as scandalous and impertinent.  While many of those allegations suggest that Brown may have engaged in criminal conduct, they relate to the controversy at issue because they provide the necessary factual background to explain why LiCausi spoke-out about this particular issue involving Brown.  Thus, those allegations are neither immaterial nor impertinent.  However, the allegation in Paragraph 161 that a supervisory police official intervened on Brown's behalf to prevent any further investigation or filing of criminal charges has no relation to the claims or issues in this matter and may cast a derogatory light on both Brown and the City of Allentown's police department.  Thus, the Court agrees that this paragraph should be struck from the Amended Complaint.

## III.    MOTION TO DISMISS

### A.    Standard

A district court may dismiss a plaintiff's complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (quotation omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (same). A claim has facial plausibility when the complaint contains factual allegations that permit the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (same). In doing so, the court must "draw on its judicial experience and common sense." *Id.* (same).

Under the governing "pleading regime[,]" a court confronted with a 12(b)(6) motion must take three steps. First, it must identify the elements needed to set forth a particular claim. *Id.* at 878 (same). Second, it should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *Id.* (same). Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (same). The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them." *Id.* at 790 (citations omitted).

### B.    Analysis

#### 1.    First Amendment

To establish a claim for First Amendment retaliation, a public employee must show that "(1) his speech is protected by the First Amendment and (2) the speech was a substantial or

motivating factor in the alleged retaliatory action . . . ." *Munroe v. Central Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015). If a plaintiff proves both, then the burden will shift to the employer to demonstrate it would have taken the same action even if the speech had not occurred. *See id.* LiCausi has pled facts that state a plausible claim of retaliation for his exercise of his First Amendment rights.

First, LiCausi has alleged facts supporting the conclusion that the First Amendment protected his speech. A government employee's speech rises to a constitutionally-protected level when the employee speaks as a citizen (rather than an employee), the speech involves a matter of public concern, and the government lacks an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made. *Id.* (quotation omitted). To make this determination, the Court must balance the interest of the employee as a citizen in commenting on matters of public concern and the government's interest as an employer in promotion the efficiency of the public services it performs through its employees. *See id.* (quoting *Dougherty v. Sch. Dist. of Philadelphia*, 772 F.3d 979, 991 (3d Cir. 2014)).

LiCausi has alleged that he spoke out on matters of public concern, including discrimination and criminal conduct at the District. He alleges that he spoke in his role as a citizen, rather than in the course of his job duties. Defendants take issue with that allegation in their Motion, but this is not the time for the Court to resolve that question. The fact that the issues had some connection to LiCausi's job is not enough to fold them within the scope of his duties automatically. Rather, determining the hat that LiCausi wore when speaking will require a factual record more robust than what the Court currently has. Finally, at this stage of the proceedings, the Court cannot determine whether the District had an adequate justification for treating LiCausi

differently from another member of the public who speaks out on these issues. Later in the case, the District might be able to advance such interests. They are not in the Amended Complaint, however, so the Court cannot consider them.

Second, LiCausi has alleged facts that make a plausible claim that his speech was a motivating factor in the District's actions. "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). LiCausi alleges facts to establish a pattern of antagonism. Indeed, LiCausi contends that prior to August 2016, he had a "stellar reputation" within the District and had never been "involved in any incidents, problems or disciplinary actions." (ECF No. 10 at ¶¶ 18-19.) However, after the District hired Heather Williams as a teacher in August 2016, LiCausi began to speak-out openly in criticism of the District, and the Amended Complaint sets forth a series of actions taken by Defendants against LiCausi after that time. Notably, Defendants do not tackle the pattern-of-antagonism approach to proving causation in their Motion. They argue only that LiCausi has not alleged facts to satisfy the unusually-suggestive-temporal-proximity method.

Defendants also contend that the alleged adverse employment actions are not actionable forms of retaliation. Those arguments rest largely on factual challenges that the Court cannot consider at this stage of the proceedings. For example, LiCausi alleges that he was suspended as a result of his exercise of his First Amendment rights. The District might think otherwise, but now is not the time to wade into that dispute. Similarly, Defendants argue that reprimands cannot constitute adverse employment actions. Defendants are correct that "reprimands that do not 'effect a material change in the terms or conditions of ... employment' cannot be considered adverse

employment actions." *Mieczkowski v. York City Sch. Dist.*, 414 F. App'x 441, 447 (3d Cir. 2011) (citation omitted). However, LiCausi asserts more than reprimands standing in isolation. He alleges that reprimands and other adverse employment actions have "eliminated any possibility for [him] to successfully obtain promotion within Defendant District and/or to pursue a position of principal or assistant principal at the middle school or high school level in the surrounding school districts." (ECF No. 10 at ¶ 258.) This allegation—coupled with allegations that Defendants reassigned LiCausi to an elementary school, relegated his role to that of a teacher, and summarily dismissed his application for a high school principal position—can establish the adverse employment actions necessary to support his First Amendment retaliation claims.

### 2. Due process

The Fourteenth Amendment to the Constitution forbids states from depriving "any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend XIV. This provision contains both substantive and procedural components. *See Holland v. Rosen*, 895 F.3d 272, 292 (3d Cir. 2018). LiCausi alleges violations of both.

#### a. Substantive due process

LiCausi does not address Defendants' argument that he failed to state a viable substantive due process claim. Instead, he focuses on procedural due process. On that ground alone, the Court can dismiss his substantive due process claim. Even if LiCausi did not waive the right to argue against the dismissal of his substantive due process claim, the Court would nevertheless find that he failed to state such a claim because the Third Circuit has held that public employment is not a fundamental interest entitled to substantive due process protection. *See Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 142-43 (3d Cir. 2000). Thus, LiCausi's public employment with the

District is not a fundamental interest under the U.S. Constitution, and he cannot state a substantive due process claim on this basis.

### b. Procedural due process

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (quotation omitted). Where the interest at stake is not fundamental, the governmental action "will be upheld so long as the state satisfies the requirements of procedural due process." *Nicholas*, 227 F.3d at 142. LiCausi advances two procedural due process claims. The first is a property-based procedural due process claim based on his three-day suspension. The second is a "stigma-plus" claim, in which LiCausi contends he was deprived of his liberty interest in his reputation.

LiCausi has not pled a plausible procedural due process claim with respect to an alleged deprivation of property. Before a government employee can succeed on a procedural due process claim, the employee must establish a constitutionally protected property right. *Mancini v. Northampton Cty.*, 836 F.3d 308, 315 (3d Cir. 2016). Relevant here, a unilateral expectation of employment "does not amount to a constitutionally protected property interest …." *Id.* (quotation omitted). Thus, LiCausi's numerous allegations that Defendants placed false and harmful information in his personnel file, gave him negative performance evaluations, and precluded him from obtaining a principal position, thereby hindering LiCausi from obtaining suitable employment elsewhere, are insufficient to establish a property right that triggers procedural due

process.  However, Defendants appear to concede that LiCausi has a property interest in his salary and that he was deprived of this interest for 3 days when he was suspended without pay.

Once an employee establishes a constitutionally protected property interest, the next question is whether the available procedures provided due process of law.  In most instances, "procedural due process requires that when the government seeks to discharge an employee who possess[es] a protected property interest in her job, 'it must afford notice and opportunity for hearing appropriate to the nature of the case before the termination becomes effective.'"  *Mancini*, 836 F.3d at 315 (quotation omitted).  However, procedural due process is a flexible inquiry, based on the circumstances.  *See Jennings v. Rodriguez*, 138 S.Ct. 830, 852 (2018).  When an employer does less than discharge the employee, it can provide less process and still comply with the Constitution.  *See Gilberg v. Homar*, 520 U.S. 924, 932 (1997).  To determine what process is constitutionally due, courts must balance three factors:  the private interest affected by the official action; the risk of an erroneous deprivation of such an interest through the procedures used; and the government's interest.  *See id.* at 931-32 (quotation omitted).

Here, the private interests at issue were relatively small.  LiCausi was suspended for a few days, and his fringe benefits were not interrupted.  On the other hand, LiCausi received written notice in advance of the alleged violation, as he admits in the Amended Complaint.  He was given an opportunity to respond to the charges at a hearing.  He also received a written notice of his suspension.  Thus, the pre-deprivation procedures were sufficiently robust.  Finally, the District has an interest in disciplining its employees relatively promptly, without full-blown hearings that will be expensive, time-consuming, and diminish the value of the punishments by making them temporally remote from the conduct in question.  Thus, under the circumstances, the District's process was sufficient.

The other aspect of LiCausi's procedural due process claim, the deprivation of a liberty interest in his reputation, also fails. "[R]eputation *alone* is not an interest protected by the Due Process Clause. Rather, to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest." *Hill*, 455 F.3d at 236 (quotation and citations omitted) (original emphasis). This is known as the stigma-plus test. "The creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.'" *Id.* LiCausi satisfies the "stigma" prong of the test because he alleges stigmatizing statements—such as LiCausi being a racist, violating collecting bargaining and privacy rights, and being professionally inadequate—that were both false and made publicly.

However, a suspended employee does not endure a "deprivation" under the law because the employee remains employed. *See Donovan v. Pittston Area Sch. Dist.*, 717 F. App'x 121, 125 (3d Cir. 2017). Thus, LiCausi has not satisfied the "plus" prong of the test because the District did not terminate his employment. *See Andrekovich v. Borough of Punxsutawney*, No. 17-cv-1041, 2018 WL 5442441, at *18 (W.D. Pa. Oct. 29, 2018); *Harley v. City of New Jersey City*, No. 16-cv-5135, 2017 WL 2779466, at *10 (D.N.J. June 27, 2017) ("Generally, courts have found that nothing short of a plaintiff losing his job can qualify as the 'plus' factor."); *Williams v. Conewago Twp. Bd. of Sup'rs*, No. 14-cv-1761, 2015 WL 1034535, at *3 (M.D. Pa. Mar. 10, 2015), *aff'd*, 640 F. App'x 209 (3d Cir. 2016) ("The Third Circuit has instructed that the 'plus' requirement can only be satisfied by a tangible loss of employment; generally, anything less than termination is insufficient."). Indeed, "[u]npaid suspensions do not trigger procedural due process protection for [deprivation of reputation] …." *Lande v. City of Bethlehem*, No. 07-cv-2902, 2010 WL 5173154, at *13 (E.D. Pa. Dec. 10, 2010), *aff'd*, 457 F. App'x 188 (3d Cir. 2012) (citation omitted).

### 3. Conspiracy

Defendants seek to dismiss the conspiracy claims arising under 42 U.S.C. § 1985(3). "Section 1985(3) permits an action to be brought by one injured by a conspiracy formed 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws.'" *Farber v. City of Paterson*, 440 F.3d 131, 134 (3d Cir. 2006) (quoting 42 U.S.C. § 1985(3)). In order to state a conspiracy claim under Section 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Id.* (quotation omitted). "[A] plaintiff must allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." *Id.* at 135.

LiCausi's Section 1985(3) claims fail because he has not alleged facts to establish that anyone had a racial animus. LiCausi alleges that his race is different from at least one defendant, and he attempts to supplement that by pointing to the race of other defendants' in his opposition brief. Although LiCausi claims that he made allegations about racial animus, he does not allege any facts to establish racial animus on the part of any defendant. Instead, he makes threadbare recitals of the element of racial animus.

However, Defendants apparently do not seek to dismiss the conspiracy claims under 42 U.S.C. §1983. Indeed, they make no mention of the Section 1983 claims in their supporting briefs. LiCausi can maintain multiple, different conspiracy claims within a single count. *See Jutrowski*

*v. Twp. of Riverdale*, 904 F.3d 280, 293 n.14 (3d Cir. 2018). Because Defendants did not seek dismissal of the Section 1983 conspiracy claims, those claims will proceed.

### 4. Municipal liability under *Monell*

Under the familiar standard, the District may only be held liable pursuant to 42 U.S.C. § 1983 if LiCausi can identify a District policy or custom that violated his constitutional rights. *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 761 (3d Cir. 2019). "Therefore, to plead a viable *Monell* claim and hold a municipality liable under Section 1983, a federal plaintiff must establish '(1) that a constitutionally-protected right has been violated, and (2) the alleged violation resulted from municipal policy or custom, or the deliberate indifference to the rights of citizens.'" *Moody v. City of Philadelphia*, No. 18-cv-2413, 2019 WL 3037179, at *9 (E.D. Pa. July 10, 2019) (quotation omitted). "Policy is made when a 'decisionmaker [with] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Wright v. City of Philadelphia*, 685 F. App'x 142, 146 (3d Cir. 2017) (quotation omitted). "'Custom ... can be proven by showing that a given course of conduct … is so well-settled and permanent as virtually to constitute law.' Custom stems from policymakers' 'acquiescence in a longstanding practice or custom which constitutes the 'standard operating procedure' of the local governmental entity.'" *Id.* at 146-47 (quotations omitted). "To satisfy the pleading standard, [LiCausi] must identify a custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted). On the other hand, "[d]eliberate indifference stems from government inaction, namely a city's failure to train its employees on avoiding constitutional violations." *Wright*, 685 F. App'x at 147 (quotation omitted). In his opposition to Defendants' Motion to Dismiss, LiCausi does not contend that the District is subject to *Monell* liability due to deliberate indifference. Thus, the Court considers

14

whether he has identified a policy or custom that is alleged to have resulted in a constitutional violation.

LiCausi does not identify any official proclamation, policy, declaration, or edict issued by a District decisionmaker that directed District employees to retaliate against other employees who exercised their First Amendment rights. However, he does allege the District had a custom of retaliating against employees who spoke out on matters of public concern, he points to the example of Jose Rosado as an example of another employee impacted by that custom, and he claims that Defendant Kelly warned him that he would be subject to the same fate. (ECF No. 10 at ¶¶ 118-122.) Taken together, and read in the light most favorable to LiCausi, these allegations plausibly allege that the District had a custom of retaliation.

### 5. Intentional infliction of emotional distress

Defendants argue that they are immune from LiCausi's claim for IIED under the Pennsylvania Subdivision Tort Claims Act and that Defendant Parker is immune as a high public official. LiCausi does not respond to either argument, and the Court therefore treats the arguments as unopposed. *See Wen v. Willis*, 117 F. Supp. 3d 673, 678 n.1 (E.D. Pa. 2015) (deeming defendants' argument unopposed where plaintiff failed to respond to argument in response to motion to dismiss); *Dale v. Abeshaus*, No. 06-cv-4747, 2013 WL 5379384, at *14 n.76 (E.D. Pa. Sept. 26, 2013) ("[I]f a plaintiff fails to respond to all of the arguments raised in a motion to dismiss, the court may grant the motion to dismiss as uncontested with respect to those arguments.").

Moreover, the Court would dismiss these claims even if LiCausi had responded. To state a claim for IIED, the plaintiff must allege "intentional outrageous or extreme conduct by the defendant, which causes severe emotional distress to the plaintiff. In addition, a plaintiff must

suffer some type of resulting physical harm due to the defendant's outrageous conduct." *Swisher v. Pitz*, 868 A.2d 1228, 1230 (Pa. Super. Ct. 2005) (quotation omitted). To rise to an actionable level, the conduct must be "so outrageous in character, so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society." *Id.* at 1230 (same). "[I]t is for the court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Id.* at 1231 (same). Having reviewed the Amended Complaint, the Court determines that the individual Defendants' alleged conduct is neither extreme nor outrageous.

### 6. Defamation

Defendants contend that LiCausi cannot maintain a claim against them for defamation. However, none of the 10 counts in LiCausi's Amended Complaint asserts a cause of action against Defendants for defamation. It is therefore not part of this case.

### 7. Qualified immunity

Defendants' qualified immunity argument rests on their assertion that LiCausi has not pled a violation of a constitutional right. The Court has already concluded otherwise.

### 8. Punitive damages

Punitive damages are not available against the District or against any defendant in his or her official capacity. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."). The question of whether LiCausi can sustain his punitive damages claims against the individual Defendants likely turns on Defendants' state of mind. It is therefore not appropriate for resolution on a motion to dismiss. *See Garanin v. City of Scranton*, No. 19-cv-1275, 2019 WL 6875541, at *22 (M.D.Pa. Dec. 17, 2019) (citing *In re Lemington Home for the Aged*, 777 F.3d 620, 631 (3d Cir. 2015)).

## IV. CONCLUSION

The Court will strike paragraph 161 from the Amended Complaint and will dismiss LiCausi's due process claims, his claims under Section 1985(3), and his claim for intentional infliction of emotional distress. The remaining claims will otherwise proceed. An appropriate Order follows.

Dated: February 4, 2020

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.